UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ADARELLA DEYLII,

                        Plaintiff,                   13-cv-06669 (NSR)

   -against-                                    OPINION AND ORDER

NOVARTIS PHARMACEUTICALS
CORPORATION,

                        Defendant.
----------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

Adarella Deylii ("Plaintiff") brings this action against Novartis Pharmaceuticals Corporation ("Novartis" or "Defendant"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), Title VII, 42 U.S.C. § 2000e, and state and New York City anti-discrimination laws on the basis of age and race discrimination and retaliation.[1] Before the Court is Defendant's motion to dismiss Plaintiff's gender and age discrimination claims pursuant to Fed. R. Civ. P. 12(b)(6).[2] For the following reasons, Defendant's motion is GRANTED.

I.     **Background**
       a. **Plaintiff's Claims**[3]

---

[1] Although Plaintiff's Complaint also alleges gender discrimination, Plaintiff voluntarily withdrew her gender discrimination claim. *See* Pl. Opp'n Br. 1.

[2] Defendant's motion to dismiss does not address Plaintiff's race or retaliation claims. Therefore, this Opinion & Order does not address those claims. *See also infra* Section III(b)(ii).

[3] The following facts are taken from the Complaint unless otherwise noted, and are accepted as true for purposes of this motion.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/16/2014

1

Plaintiff is an African American woman who was born in April 1961. She began working at Novartis as a sales representative on February 9, 2004. As a sales representative, Plaintiff was charged with selling a number of pharmaceutical drugs, including Exelon Patch, Stalevo, Comtan, and Focalin XR. Plaintiff's product portfolio was weighted as follows: 50% Exelon Patch, 20% Focalin XR, 10% Stalevo, and 10% Comtan. Of the employees on Plaintiff's team, Plaintiff was the only African American and the only individual over 50.

In March 2010, Lori Feller became Plaintiff's supervisor, filling a position that had been vacant. Plaintiff alleges that soon after Ms. Feller took this position, Ms. Feller began to discriminate against Plaintiff. First, Plaintiff alleges, Ms. Feller began reporting that Plaintiff was performing below expectations. Plaintiff states that on the contrary, she had met or exceeded the goals set in three of the four products she sold in 2010. The only product for which Plaintiff did not meet her goal was Exelon Patch and Plaintiff alleges that the Exelon Patch was a difficult product to sell for all Novartis employees. Plaintiff states that her sales numbers were more depressed because the Exelon Patch was heavily weighted for Plaintiff. Other employees supervised by Ms. Feller had a less than 50% weighting for Exelon Patch. For the sales year of 2010, Ms. Feller threatened to give Plaintiff a score of 1 out of 3 on her end of the year review, which would have made Plaintiff susceptible to layoffs in the event the company decided to take such action.[4] In each previous year that Plaintiff worked at Novartis, Plaintiff received either rating of 2 or 3. Plaintiff's sales ranking for the 2010 sales year was 116 out of 146 nation-wide sales representatives and the territory to which she was assigned was ranked 7 out of the 11

---

[4] It is unclear whether Ms. Feller gave Plaintiff a "1" rating for the 2010 year. Plaintiff first states that Ms. Feller "threatened" to give Plaintiff a "1" (Compl. ¶ 34) but subsequently states that she did receive a 1 (Compl. ¶¶ 46, 68).

territories supervised by Ms. Feller. In March 2011, Plaintiff received an award for outstanding goal achievement for Stalevo and Comtan in 2010.

In September 2010, Plaintiff submitted a grievance to the Human Resources Department of Novartis complaining of the way she was being treated by Ms. Feller. After Plaintiff filed this complaint, there were changes made to the Neurology & Psychology Unit to which Plaintiff belonged. Plaintiff's primary responsibility was previously with neurology but after September 2010, she was shifted to psychology, with a specific focus on schizophrenia. This resulted in a changed client list for Plaintiff[5] and a new pharmaceutical in her portfolio, Fanapt.

In January 2011, Plaintiff was assigned a new sales district, although she remained within the geographic area supervised by Ms. Feller, and her client base changed significantly. Plaintiff received 99 new clients and kept only 5 clients from her previous district. Plaintiff alleges that this was done with the purpose of discriminating against Plaintiff because no younger, Caucasian sales representatives lost such a large portion of their client base.

Plaintiff alleges that in September 2010 and May 2011, Ms. Feller falsely accused Plaintiff of falsifying sales calls to physicians. Novartis' policy is that the first such incident receives a warning, while the second is grounds for dismissal. Plaintiff believes the reason Ms. Feller falsely accused Plaintiff was because Plaintiff's sales performance was improving and therefore, Ms. Feller could no longer fault Plaintiff for poor sales. Plaintiff insists that there is no truth to these accusations.

Plaintiff states that in May 2011, her client list changed for a third time. Plaintiff claims that in May and June 20111, she was the leading seller of Fanapt on Ms. Feller's team and was a

---

[5] The timing of the changes in Plaintiff's client list are not entirely clear from the Complaint. Plaintiff does allege that her client list changed on several occasions.

contender for a national contest. The contest was originally scheduled to end at the end of June, but it was pushed back until the end of July. Plaintiff was terminated on July 13, 2011.

### b. *Velez* Action and Settlement

In 2004, Novartis was named as the defendant in a class action lawsuit filed in the Southern District of New York that alleged gender discrimination. That case, *Velez v. Novartis*, went to trial and ended in a jury verdict for plaintiffs. The parties ultimately entered into a settlement agreement with approximately $150 million paid to the class with additional programmatic relief in the form of changes to Novartis' employment practices valued at over $22 million. Judge McMahon approved the settlement on July 14, 2010 ("Preliminary Approval Date") and after notice to class members and a fairness hearing pursuant to Rule 23, the settlement was fully approved on November 30, 2010.

The settlement class in *Velez* was defined as: "[A]ll women who are currently holding, or have held, a sales-related position of Sales Representatives, Sales Consultants, Executive Sales Consultants, Sales Associates, Sales Specialists, Senior Sales Specialists or District Managers I with Novartis Pharmaceuticals Corporation, from the state of the class period, July 15, 2002, through the Preliminary Approval Date[.]" Settlement Agreement and Release ("SAR"), *Velez* Docket No. 294-2 at 6; *see also Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194(CM), 2010 WL 4877852, at *8-9 (S.D.N.Y. Nov. 30, 2010) ("Judge McMahon Opinion Approving Settlement").

A notice of the SAR ("Notice") was provided to all class members and included the description of the class and in bold, capital letters, described the document as a notice of a gender discrimination class action against Novartis, and informed the class member that she had a right to obtain money pursuant to the settlement. *Velez* Docket No. 294-3 at 1. The notice also provided a summary of the settlement, the opt-out procedures, a description of the claims being

released, and the contact information for the lawyers representing the class, among other things. *Id.* at 2-14.

As a part of the settlement agreement, the class members agreed to release certain claims that they had against Novartis. In the Notice, the section entitled "Release of Claims" provides,

> [Y]ou will not be able to bring a lawsuit in any form for anything related to any kind of employment discrimination at Novartis that happened before [the Preliminary Approval Date, i.e. July 14, 2010]. More specifically, you will be releasing any and all employment discrimination claims including, but not limited to, claims of alleged pay or promotion discrimination, sexual harassment claims, hostile work environment claims or benefits claims under Title VII, 42 U.S.C. § 1981a …, and any other applicable federal, state, or local statutes, common law, or regulation. This is true whether or not you are aware of those claims now.

*Id.* at 10. The Notice also referred class members to the specific sections of the SAR that relate to the release of claims and informed the class members how to obtain a copy of the SAR. The SAR defines "Released Claims" as

> any and all claims, including both known claims and Unknown Claims, that were or could have been asserted in the Civil Action, including but not limited to, claims of alleged employment discrimination, sexual harassment claims, hostile work environment claims or benefits claims under Title VII [], and any other applicable federal, state, or local statutes, common law, or regulation. Furthermore, this Release includes all claims for monetary damages, injunctive, declaratory or equitable relief, and costs and attorneys' fees, whether arising under Title VII, Section 1981a or under any other federal, state, local or common laws or regulations arising out of the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims, including both known claims and Unknown Claims, that were or could have been asserted in the Civil Action.

SAR at 5-6. Further, the SAR provides that the "Release does not include or cover any actions or omissions occurring after the Preliminary Approval Date[.]" *Id.* at 6. Finally, the SAR notes that unless the class member opted out of the settlement, the "Release shall apply whether or not such

individual has executed and delivered a Claim Form or otherwise actively participated in the Settlement." *Id*. at 11.

## II. Legal Standard
### a. Motion to Dismiss

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### b. Documents Considered on Motion to Dismiss

The materials that may be considered on a motion to dismiss are limited to "the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken," *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.

1993), which includes documents filed in other courts. *See World Wrestling Entm't, Inc. v. Jakks Pac. Inc.*, 425 F. Supp. 2d 484, 508 n. 16 (S.D.N.Y. 1999) ("[T]he Court properly can take judicial notice of the filings and the October 16, 2003 Order in the Connecticut state court action."); *see also Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("[F]ederal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.").

### III.   Discussion

#### a.  Consideration of *Velez* Settlement Documents

It is well-settled that a court may consider "matters of which judicial notice may be taken" when deciding a motion to dismiss. *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999). The Court may take judicial notice of "public documents on a motion to dismiss to determine whether claims are barred by prior litigation." *Cowan v. Codelia*, No. 98 civ. 5548, 2001 WL 856606 (S.D.N.Y. July 30, 2001). Settlement agreements are documents of which a court may take judicial notice in order to determine whether future claims are barred by a previous settlement. *See, e.g.*, *Lucky Brand Dungarees Inc. v. Ally Apparel Resources LLC*, No. 05Civ.6757 (LTS)(MHD), 2006 WL 3771005, at *1 (S.D.N.Y. Dec. 20, 2006) (court took judicial notice of settlement agreement entered into between the parties in connection with litigation that took place in the Southern District of Florida); *Wolson v. Reed Elsevier Inc.*, No. 09 Civ. 4040(DC), 2010 WL 334919, at *1 (S.D.N.Y. Jan. 29, 2010) (same). Here, the Court would be remiss if it did not take judicial notice of the Settlement Agreement and Release associated with *Velez v. Novartis Pharm. Corp.*[6] In addition to being part of

---

[6] The documents considered include the Settlement and Release ("SAR"), Docket Entry 294-2, Exhibit A on *Velez* docket and the Notice to the class ("Notice"), Docket Entry 294-3, Exhibit B.

proceedings in another action before this court, *see World Wrestling Entm't, Inc. v. Jakks Pac. Inc.*, 425 F. Supp. 2d 484, 508 n. 16 (S.D.N.Y. 1999) ("the Court properly can take judicial notice of the filings and the [] Order in the [] state court action."), "if the Settlement Agreement would dispose of this matter . . . it makes no sense to deny dismissal simply because it was not referenced in the Complaint." *In re Refco Inc. Sec. Litig.*, Nos. 07–md–1902 (JSR), 08–cv–7416 (JSR), 2012 WL 4053939, at *2 (S.D.N.Y. Aug. 8, 2012), *report and recommendation adopted sub nom. In re Refco Inc. Sec. Litig.*, Nos. 07 MDL 1902(JSR), 08 Civ. 7416(JSR), 2012 WL 4009175 (S.D.N.Y. Sept. 12, 2012); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (JG)(JO), 2008 WL 115104, at *8 (E.D.N.Y. Jan. 8, 2008) ("[Settlement agreement was] well within the range of materials that a court may consider on a motion to dismiss . . . [Settlement agreement] was filed on the public docket of the *Visa Check* litigation, and [] is therefore cognizable information on a motion to dismiss."). Therefore, the Court considers the SAR and Notice from *Velez*. *Velez* Docket Nos. 294-2, 294-3 (Docket No. 294 Exs. A & B).

    b. *Velez* **Settlement Issues**

        i. **Plaintiff is a Class Member and Subject to the Terms of the Settlement Agreement in** *Velez*

Defendant alleges that because Plaintiff's claims arose before the Preliminary Approval Date and involve allegations of employment discrimination, all of the claims in the Complaint are covered by the Settlement Agreement and as a class member, Plaintiff is barred from bringing them in this action.

"The affirmative defense of res judicata may be the basis of a motion to dismiss a pleading when it is clear from the records properly before the Court that the doctrine applies." *Lucky Brand Dungarees Inc. v. Ally Apparel Res. LLC*, No. 05 Civ. 6757(LTS)(MHD), 2006 WL

3771005, at * 1 (S.D.N.Y. Dec. 20, 2006) (citations omitted). "[A] dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002). Judge McMahon, when she approved the Settlement Agreement, dismissed with prejudice the claims giving rise to the action. *Velez v. Novartis Pharm.*, No. 04 Civ. 09194(CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ("Judge McMahon Opinion").

Although Plaintiff disputes that she signed any release, *see* Pl. Opp'n Br. 5, it is clear that Plaintiff was a Class Member under *Velez*. The Complaint affirms that Plaintiff was a sales representative during the period of time covered by the SAR and Notice. "Absent a violation of due process or excusable neglect for failure to timely opt out, a class-action settlement agreement binds all class members who did not do so." *In re Am. Express Fin. Advisors Securities Litig.*, 672 F.3d 113, 129 (2d Cir. 2011); *see also Gonzalez v. City of New York*, 396 F. Supp. 2d 411, 416 (S.D.N.Y. 2005) ("An individual is a member of a class certified pursuant to Rule 23(b)(3) if plaintiffs follow proper notice procedures and the putative member did not opt out."). Plaintiff does not allege that the Notice was inadequate[7] or that she expressed a desire to or attempted to opt out of the settlement. Therefore, Plaintiff is bound by the terms of the SAR.

### ii. *Velez* Release Does Not Bar Plaintiff's Age & Race Discrimination Claims

The Court begins its analysis by noting that a "settlement agreement is a contract that is interpreted according to general principles of contract law." *Omega Eng'g, Inc. v. Omega, S.A.*,

---

[7] Even if Plaintiff did challenge the Notice, "[n]otice is adequate if it may be understood by the average class member." *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (internal quotation marks omitted). The Court finds nothing that suggests that the Notice would not have been understood by the average class member. Additionally, Judge McMahon found notice to be adequate when approving the settlement. *Velez v. Novartis Pharm.*, No. 04 Civ. 09194(CM), 2010 WL 4877852 at *17 (S.D.N.Y. Nov. 30, 2010).

432 F.3d 437, 443 (2d Cir. 2005). As stated by Judge McMahon, the claims in *Velez* were "that Novartis favored male sales force employees over females in compensation and promotion and that Novartis favored non-pregnant sales force employees over pregnant sales force employees in the terms and conditions of their employment." Judge McMahon Opinion at *10. *Velez* was brought on the basis of gender discrimination, but the settlement language purports to "fully, finally, and forever release employment claims covered by the Settlement Agreement against Novartis up to the Preliminary Approval Date." Docket No. 294 Ex. A "Notice of Pendency of Class Action Proposed Settlement and Settlement Hearing" p. 10. Although the settlement agreement contemplates a broad release of any and all employment claims that a class member may have, Plaintiff asserts that the release did not encompass any future wrongdoing and that the release should not cover areas of discrimination not brought in *Velez*.

Settlement agreements often encompass a broad range of claims, including claims that were not brought in the complaint. *See In re Literary Works Elec. Databases Copyright Litigation*, 654 F.3d 242, 247 (2d Cir. 2011) ("Parties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions, particularly when a defendant's ability to limit his future liability is an important factor in his willingness to settle."). However, "a settlement agreement's bare assertion that a party will not be liable for a broad swath of potential claims does not necessarily make it so." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). "The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct." *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) (quoting *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d

456, 460 (2d Cir. 1982)). The question here, then, is whether the conduct alleged by Plaintiff arises out of an "identical factual predicate" as that alleged in *Velez*. The Court holds that it does not.

The factual basis of the *Velez* action was that female employees working in sales at Novartis were not treated equally to their male counterparts and that pregnant female sales employees were discriminated against in favor of non-pregnant employees. The heart of Plaintiff's claims here are that she was discriminated against and terminated due to her age and race. The only similarities are that both actions allege employment discrimination at Novartis. "The most fundamental principles underlying class actions limit the powers of the representative parties to the claims they possess in common with other members of the class." *Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9, 18 (2d Cir. 1981). Here, the attenuated connection between the two actions is not enough to satisfy the "identical factual predicate" standard. *C.f. Lomeli v. Sec. & Inv. Co. Bahrain*, 546 F. App'x 37, 40 (2d Cir. 2013) (identical factual predicate of "the alleged misconduct of the Fairfield Greenwich defendants in failing to conduct adequate due diligence, and misrepresentations regarding their due diligence."); *Murphy v. Int'l Bus. Machs. Corp.*, No. 10 Civ. 6055(LAP), 2012 WL 566091, at *8 (S.D.N.Y. Feb. 21, 2012) (claims that a benefit plan's cash balance formula "constitute[d] unlawful age discrimination under ERISA § 204(b)(1)(H)" was identical to already litigated and settled claims that the "formulas discriminated on the basis of age in violation of ERISA § 204(b)(1)(H)"). Thus, Plaintiff is not barred by the *Velez* settlement from asserting claims of age or race discrimination here.

Because the Court finds that Plaintiff's age and race claims were not encompassed by the *Velez* release, it need not reach the issue of whether the conduct at issue is barred by the settlement because it allegedly commenced before the Preliminary Approval Date.

### c. Plaintiff's Discrimination Claims

#### i. Age Discrimination

To establish a prima facie case of employment discrimination, Plaintiff must show that (1) she is part of the protected age group, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the circumstances surrounding the adverse employment action give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Prior to the decisions of *Twombly* and *Iqbal*, the Supreme Court held that a plaintiff in an employment discrimination action was not required to "plead facts establishing a prima facie case" of discrimination, and characterized the *McDonnell Douglas* standard as "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). At the time *Swierkiewicz* was decided, however, the pleading standard was governed by the "no set of facts" test set forth in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Because the motion to dismiss standard of *Conley* is no longer valid, the current pleading requirements in an employment discrimination action are unclear. The Second Circuit has noted that "[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit." *Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012); *see also Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011); *Schwab v. Smalls*, 435 F. App'x 37, 39–40 (2d Cir. 2011) ("Questions have been raised, however, as to *Swierkiewicz*'s continued viability in light of *Twombly* and *Iqbal*."). In the wake of *Twombly* and *Iqbal*, the Second Circuit has stated that "at a minimum, employment discrimination claims must meet the standard of pleading set forth in

*Twombly* and *Iqbal*, even if pleading a prima facie case is not required." *Hedges*, 456 F. App'x at 23.

Although it is unsettled whether a Plaintiff must plead a prima facie case of discrimination at the motion to dismiss stage, "the elements [of a prima facie case] provide an outline of what is necessary to render her claims for relief plausible." *Sommersett v. City of N.Y.*, No. 09 Civ. 5916(LTS)(KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011); *see also Bhanusali v. Orange Regional Med. Ctr.*, No. 10–CV–6694 (CS), 2013 WL 4828657, at *5 (S.D.N.Y. Aug. 12, 2013). Courts therefore "consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests." *Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10 Civ. 0251(LDW)(AKT), 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011); *see also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013). Therefore, "[i]n the absence of a facially plausible discrimination claim that gives fair notice to a defendant of the acts that form the basis of the claim, dismissal at the pleading stage is warranted." *Williams v. Addie Mae Collins Cmty. Serv.*, No. 11 Civ. 2256(LAP), 2012 WL 4471544, at *3 (S.D.N.Y. Sept. 27, 2012) (citing *Patane v. Clark*, 508 F.3d 106, 111–13 (2d Cir. 2007)). In any case, "an ADEA complaint must 'contain sufficient facts to make plausible the conclusion that "but for" [his] age, Plaintiff [ ] would still be employed.'" *Payne v. Malemathew*, No. 09–CV–1634 (CS), 2011 WL 3043920, at *2 (S.D.N.Y. Jul. 22, 2010) (quoting *Fagan v. U.S. Carpet Installation, Inc.*, Nos. 10–1411, 10–1459, 2011 WL 923965, at *7 (E.D.N.Y. Mar. 10, 2011)).

Here, Plaintiff alleges that she is over forty years old, and thus in the protected age group, and was fired from her position. The Complaint states that Plaintiff received performance marks of two or three, indicating strong or superior performance, for all of the years that she worked at

Novartis other than 2010. The Complaint, however, is replete of facts that suggest that Plaintiff was discriminated against on the basis of her age. With regard to age, Plaintiff alleges only that she was the sole individual on Ms. Feller's team who was over 50 years old, Compl. ¶ 46, and that the younger members of the team did not have their client list adjusted as Plaintiff did, Compl. ¶ 52. However, the sole assertion that Plaintiff was the oldest employee, and the corresponding fact that the younger members did not have their client lists changed,[8] is not enough to support a plausible claim of age discrimination. *See Payne*, 2011 WL 3043920 at *2 (collecting cases supporting the fact that merely pleading that plaintiff is the oldest employee is not enough to support an inference of age discrimination).

Plaintiff asserts for the first time in her opposition brief that she was replaced by a younger individual(s). It is well-settled that a party may not amend its complaint through statements made in motion papers. *See, e.g.*, *Wright v. Ernst & Young*, 152 F.3d 169, 178 (2d Cir. 1998). However, even with this additional allegation, Plaintiff's age discrimination claim is properly dismissed. "Courts in this Circuit have not hesitated to grant a motion to dismiss discrimination claims that merely recite the statutory elements, in conclusory form, without sufficient supporting factual allegations." *Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 465 (S.D.N.Y. 2010) (dismissing age discrimination claims where plaintiff "merely repeat[ed] the statutory elements," and that the allegation that plaintiff was replaced by younger teachers lacked any specificity regarding the identity of the replacements or their ages). Similarly here, this additional allegation lacks the specificity required to be "more than an unadorned, the-

---

[8] The allegation that younger employees did not have their client lists changed in the same way Plaintiff did is inextricable tied to the fact that Plaintiff was the oldest member of her team. Plaintiff alleges that she was the only one whose client list adjusted and since she was the oldest of Ms. Feller's employees, it can only be the case that the younger employees' client lists were more stable than Plaintiff's.

defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The familiar language of *Iqbal* is applicable here: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### ii. Race & Retaliation Claims

Defendant does not address Plaintiff's race discrimination or retaliations claims in its motion to dismiss. Therefore, the Court does not address those claims.

### IV. Conclusion

Accordingly, Defendant's motion is GRANTED. The Clerk of the Court is respectfully requested to terminate this motion, Docket No. 13. Defendant is given twenty-one (21) days from the date of this Order to answer the Complaint.

Dated: June 16th, 2014  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge